[NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]
 United States Court of Appeals
 For the First Circuit

No. 97-2414

 DAVID WOOLER,

 Plaintiff, Appellant,

 v.

 SCOTT HANCOCK,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Ernest C. Torres, U.S. District Judge]

 Before

 Torruella, Chief Judge,
 Coffin, Senior Circuit Judge,
 and Stahl, Circuit Judge.

 David Wooler on brief pro se.
 Marc DeSisto, Kathleen M. Powers, and DeSisto Law Offices on
brief for appellee.

 Entered: November 4, 1998

 Per Curiam. Plaintiff David Wooler appeals pro sefrom the grant of summary judgment in favor of defendant Scott
Hancock, the former town manager for the Town of Narragansett,
Rhode Island. The underlying case is a diversity action in the
District of Rhode Island for alleged tortious interference with
a (prospective) contractual relation. We conclude that summary
judgment was improperly granted. 
 On or about May 2, 1994, Wooler was hired by Betty
Cotter to work for Wilson Publishing Company as a reporter for
the Narragansett Times (the "Times"). Wooler's job was to
cover the Town of Narragansett. Frederick Wilson, III, was the
publisher of Wilson Publishing Company. Cotter was the editor
for the Times. Cotter was also Wooler's direct supervisor from
the time he was hired until sometime later that same year when
Cotter went on maternity leave. 
 Shortly after Cotter went on leave, Hancock (and
possibly one or two other town officials) had a meeting with
Wilson about Wooler. At the meeting, Hancock complained that
Wooler's coverage of the Town was too "negative." He also
complained that he and Wooler had a personality conflict, and
he suggested that Wooler be transferred to another beat. 
Sometime within the next two months, Hancock had lunch with
Wilson. At this second meeting, Hancock stated that he would
like more "positive" stories about Narragansett. On March 3,
1995, Wilson fired Wooler.
 Almost one year later, Wooler filed the instant
complaint against Hancock alleging tortious interference with
his employment "contract." Hancock moved for summary
judgment, and the matter was referred to a magistrate judge. 
The magistrate judge issued a report recommending that summary
judgment be granted in favor of Hancock on the ground that
Wooler failed to produce any evidence demonstrating that
Hancock played a causal role in his termination. Wooler filed
timely objections to the magistrate's report. Upon review, the
district judge adopted the magistrate's recommendation. This
appeal followed.
 We review the grant of summary judgment de novo. 
Hinchey v. NYNEX Corp., 144 F.3d 134, 140 (1st Cir. 1998). In
doing so, we view all disputed facts and reasonable inferences
favorable to the nonmoving party. Perez-Trujillo v. Volvo Car
Corp., 137 F.3d 50, 52 (1st Cir. 1998). Summary judgment is
appropriate only if "there is no genuine issue as to any
material fact" and "the moving party is entitled to a judgment
as a matter of law." Fed. R. Civ. P. 56(c). The moving party
bears the initial burden of demonstrating that there are no
genuine issues of material fact for trial. Hinchey, 144 F.3d
at 140. After that, the burden shifts to the nonmoving party
with respect to each issue on which he bears the burden of
proof. Id.
 Under Rhode Island law, the elements of a cause of
action for interference with a prospective contractual relation
are:
 (1) the existence of a business
 relationship or expectancy, (2) knowledge
 by the interferor of the relationship or
 expectancy, (3) an intentional act of
 interference, (4) proof that the
 interference caused the harm sustained,
 and (5) damages to the plaintiff.
Mesolella v. City of Providence, 508 A.2d 661, 669 (R.I.
1986). Thus, Wooler bears the burden of proof on the issue of
causation.
 The evidence proffered by Hancock to negate an
inference of causation is strong. This evidence includes the
deposition testimony of Wilson. Wilson testified that he was
the person who made the termination decision, and that Wooler
was terminated because of his job performance. According to
Wilson, Wooler was not producing enough articles. In
particular, Wilson testified that a reporter in Wooler's
position is expected to produce five or six stories an issue
and that Wooler was not meeting this requirement. Wilson Dep.
at 33. Wilson further testified, unequivocally, that Hancock
had no impact on the termination decision except, perhaps, to
prolong Wooler's employment. 
 However, there is also evidence in the record tending
to support Wooler's version of events. Although, as noted
above, the evidence is conflicting on this point, a fact-finder
could conclude that Hancock's complaints to Wilson were made
during the last two months of Wooler's employment. Such a
conclusion lends some support to an inference that Hancock's
complaints caused Wooler's termination. Cf. Oliver v. Digital
Equip. Corp., 846 F.2d 103, 110 (1st Cir. 1988) (observing that
a showing of discharge "soon after" the employee engages in
protected activity is indirect proof of a causal connection). 
The possible inference is further strengthened by Cotter's
deposition testimony that Wilson seemed upset about Hancock's
complaints. There is also evidence, in the form of a notice
of decision concerning Wooler's unemployment benefits, which
could be interpreted as demonstrating a link between Hancock's
complaints and Wooler's termination. 
 In addition, there is evidence based on which a jury
could question the credibility of Wilson's explanation for the
firing. Among other things, there is evidence from which a
jury could conclude that Wooler was, in fact, producing the
requisite number of articles. Moreover, Wooler submitted
copies of many of these articles. More than one view of these
articles is possible, and a fact-finder might conclude that,
contrary to Wilson's suggestion, Wooler actually covered a
fairly broad range of non-controversial topics. Finally,
Wooler proffered deposition testimony of Wilson to the effect
that he, Wilson, had heard that Hancock threatened to "freeze"
Wooler "out of town hall." Although Wilson denied that the
threat concerned him or that it posed a problem for the
newspaper, a fact-finder might be skeptical of this denial. 
For much the same reason, a fact-finder might be skeptical of
Wilson's emphatic statement that his decision to terminate
Wooler was not "in any way" affected by Scott Hancock.
 We recognize that Wooler faces a formidable obstacle
in proving causation. The issue turns on Wilson's state of
mind, and the most direct evidence of Wilson's state of mind
are his own statements. It is not obvious what motive Wilson,
a non-party, would have to dissemble.
 Nonetheless, the weighing of alternative factual
scenarios should ordinarily be left to the finder of fact after
trial. Hodgens v. General Dynamics Corp., 144 F.3d 151, 172
(1st Cir. 1998); see also Greenburg v. Puerto Rico Maritime
Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987) ("The
precincts patrolled by Rule 56 admit of no room for credibility
determinations, no room for the measured weighing of
conflicting evidence . . . , no room for the judge to
superimpose his own ideas of probability and likelihood (no
matter how reasonable those ideas may be) upon the carapace of
the cold record."). Although Wooler's evidence may be thin, we
do not think that this is a case in which the evidence is "so
one-sided that one party must prevail as a matter of law." Id.(citation omitted). Accordingly, we vacate the judgment and
remand for further proceedings consistent with this opinion. 
 Vacated and remanded.